FILED

2010 Apr-21  AM 09:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MEDE CAHABA STABLE & STUD, LLC, ]
                                 ]
        Plaintiff,               ]
                                 ]
        vs.                      ]   2:09-CV-01397-JEO
                                 ]
WASHINGTON INTERNATIONAL         ]
HORSE SHOW,                      ]
                                 ]
        Defendant.               ]

MEMORANDUM OF OPINION

I.    Introduction.

        The Court has for consideration a Report and Recommendation filed on

February 2, 2010, by United States Magistrate Judge Ott.  (Doc. 20.)  In the

Recommendation, Judge Ott denied Defendant Washington International

Horse Show's ("WIHS") motion (Doc. 8) seeking dismissal of this action for

lack of personal jurisdiction over WIHS in the state of Alabama.  On February

16, 2010, WIHS filed an opposition to the Report and Recommendation,

arguing that the Magistrate Judge's finding of personal jurisdiction was

contrary to law and the relevant facts and premised upon an incorrect

governing legal standard.  On the basis of these objections, the Report and Recommendation was assigned to this Court for review.  After full consideration of the argument and evidence presented, this Court finds that WIHS's motion to dismiss for lack of personal jurisdiction is due to be GRANTED.

II.    Facts.[1]

Plaintiff Mede Cahaba Stable & Stud LLC ("Mede Cahaba") is an Alabama limited liability company involved in the equestrian industry.  WIHS is a Maryland operation engaged primarily in the organization, management, advertisement, and operation of an annual equestrian competition held in Washington, D.C.  Mignon C. Smith ("Smith"), the president of Mede Cahaba, has also been associated with WIHS for in excess of forty years, including serving on the board of directors until December 2008.

In 2006, WIHS approached Smith seeking a charitable contribution. Ahrian Davis Tyler ("Tyler"), Mede Cahaba's assistant manager and attorney, informed WIHS that neither Smith nor Mede Cahaba was in a position to make a charitable contribution.  Tyler suggested, however, that Mede Cahaba and

---

[1]The facts recited in this opinion are, unless otherwise indicated, taken from the allegations contained in Plaintiff's Complaint and affidavits submitted by the parties.

WIHS enter into an agreement whereby Mede Cahaba would become a major sponsor of the show with significant input into all operational, exhibition, policy and sponsorship decisions of WIHS.  In exchange, Mede Cahaba would agree to reimburse WIHS for up to $300,000  per year for any losses incurred in conducting the 2007 and 2008 shows.   Mede Cahaba maintains that, despite covering $114,939.92 in losses for the 2007 show, WIHS never performed its obligations under the agreement.   Mede Cahaba now seeks reimbursement and damages for fraud and breach of contract.

III.    Analysis.

WIHS argues that it is not subject to personal jurisdiction in the state of Alabama and that this case should be dismissed.   WIHS maintains that it neither does business in Alabama nor maintains an office in this state. Furthermore, WIHS states that it does not have continuous and systematic contacts with the state of Alabama sufficient to support general jurisdiction. Finally, WIHS argues that it lacks the minimum contacts or purposeful availment related to Plaintiff's cause of action sufficient to support specific jurisdiction.   Mede Cahaba responds that by reaching out to create a

continuing relationship and contractual obligation with a citizen of the state of Alabama, WIHS submitted itself to the personal jurisdiction of this State.

A.   Standard of Review of Magistrate Judge's Report and Recommendation.

When a magistrate judge enters a Report and Recommendation that is dispositive of a defense — in this case lack of jurisdiction over the defendant — this Court is directed to "determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b).  When conducting a de novo review, the Court is to make "an independent determination of a controversy that accords no deference to any prior resolution of the same controversy."  *United States v. Raddatz*, 447 U.S. 667, 690 (1980).  Therefore the Court will visit anew the question of personal jurisdiction over WIHS.

B.   Two Step Personal Jurisdiction Test.

It is a question of law whether a federal court has personal jurisdiction over a defendant.  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).  "The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant."  *Meier v. Sun*

*Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002).   To do so, a plaintiff must present "enough evidence to withstand a motion for a directed verdict." *Consol. Dev. Corp.*, 216 F.3d at 1291.   When personal jurisdiction is in dispute, the Court "must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).   When a defendant submits affidavits contesting the basis of personal jurisdiction, the plaintiff must respond and "bears the burden of proving by affidavit the basis upon which jurisdiction may be obtained." *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 (11th Cir. 1999).   These affidavits must provide substantive evidence of jurisdiction, and not mere conclusory statements that, "although presented in the form of factual declarations, are in substance legal conclusions." *Id.* at 1215.   To the extent the declarations of the parties conflict, all reasonable inferences must be drawn in favor of the plaintiff. *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).

The Court's determination of whether it has personal jurisdiction over a non-resident defendant turns on a two-prong test.   *See, e.g., Madara*, 916 F.2d at 1515-16.   Only if both prongs are satisfied will the Court assert

jurisdiction.  *Id*. at 1514.  "First, we consider the jurisdictional question under the state long-arm statute."  *Id*.  If that prong is met, the second prong requires the court to determine whether there are sufficient minimum contacts to satisfy due process concerns.  *Id*.

Alabama's Long-Arm Statute permits the exercise of jurisdiction over non-residents to the "fullest extent allowed under the Due Process Clause of the Fourteenth Amendment to the Constitution."  *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-56 (11th Cir. 2000).  Because the due process guarantees of the Alabama Constitution are coextensive with that of the Constitution of the United States, this Court turns to the question whether the requirements for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment have been satisfied.  *See Ex parte Georgia Farm Bureau Mut. Auto. Ins. Co.*, 889 So. 2d 545, 550 (Ala. 2004).

"Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice."  *Consol. Dev. Corp.*, 216 F.3d at 1291; *see also Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945).  The sufficiency of the defendant's

contacts with the forum state depends on the quantity and quality of those

contacts, as well as the type of personal jurisdiction being asserted:  specific

or general.  *Consol. Dev. Corp.*, 216 F.3d at 1291.  If the Plaintiff is able to

show "that a defendant purposefully established minimum contacts within

the forum State, these contacts may be considered in light of other factors

to determine whether the assertion of personal jurisdiction would comport

with fair play and substantial justice."  *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 476-77 (1985) (citations omitted).

    C.    Minimum Contacts.

    The nature and quality of the required minimum contacts "vary

depending upon whether the type of personal jurisdiction being asserted is

specific or general."  *Consol. Dev. Corp.*, 216 F.3d at 1291.

        1.    Specific Jurisdiction.

    To constitute minimum contacts for purposes of specific jurisdiction,

> the defendant's contacts with the applicable forum must satisfy
> three criteria. First, the contacts must be related to the
> plaintiff's cause of action or have given rise to it. Second, the
> contacts must involve some act by which the defendant purpose-
> fully avails itself of the privilege of conducting activities within

the forum . . ., thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there.

*Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (citations omitted).  The "minimum contacts" requirement is grounded in fairness and assures "that 'the defendant's conduct and connection with the forum State [is] such that he should reasonably anticipate being haled into court there.'"  *Consol. Dev. Corp.*, 216 F.3d at 1291-92; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Furthermore, the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the unilateral activity of another party or a third person." *Rudzewicz*, 471 U.S. at 475 (citations omitted).  While the Court has held that no bright line rules or tests exist for personal jurisdiction, a single contact can be enough, though that contact must create a substantial connection with the forum state.  *Id.* at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.") But it is the quality and not the quantity of the contacts that

matter, and a single contact with an out-of-state party, if supported by nothing else, will not automatically support jurisdiction. *Id*. at 478.

*Burger King Corperation v. Rudzewicz* and its progeny have come to define the instances in which the making of a contract with an out-of-state entity may subject the contractor to the personal jurisdiction of that state. 471 U.S. 462 (1985). In *Rudzewicz*, the Supreme Court reaffirmed that "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligation with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Id*. at 473 (citations omitted). Despite this seemingly broad and bright line statement of the law of personal jurisdiction, the Court commanded an analysis of the specific facts of each case, noting that it "long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests." *Id*. at 478 (citations omitted). The Court then resolved the "continued division among lower courts" on the question of whether a contract with an out-of-state party alone was sufficient to establish specific jurisdiction, stating, "[W]e believe the answer clearly is that it cannot." *Id*. The Court concluded that a "highly

realistic approach" was necessary for determining specific jurisdiction, noting that the contract itself is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id.* at 479 (citations omitted).  The important factors to be considered in determining specific jurisdiction in a contractual dispute, the Court held, are "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id.*

Applying the *Rudzewicz* factors to this case, it is evident that WIHS is not subject to specific jurisdiction.  Throughout its pleadings and affidavits, Mede Cahaba repeatedly makes conclusory statements that WIHS purpose-fully availed itself of this forum because it "solicited and negotiated a contract with Mede Cahaba, a citizen of the state of Alabama." (Doc. 18 at 7.)  As discussed above, however, conclusory statements are granted little weight, particularly in an instance such as this where Mede Cahaba's version of events does not appear to comport with the record.  According to Mede Cahaba's own affidavits, WIHS did not solicit the contract in question. Rather, WIHS "approached Mignon C. Smith to solicit a charitable contribu-

tion." (Doc. 14, Ex. 1, Aff. of Ahrian Davis Tyler, ¶3.)  WIHS's solicitation was rejected.  *Id.* at ¶4.  The agreement at the heart of the present controversy arose not as a result of WIHS's action, but rather from an offer by Mede Cahaba stating that, in exchange for coverage of certain debts, "Mede Cahaba would consider a sponsorship agreement that would provide extensive advertising and exposure for Mede Cahaba through prominent placement in the WIHS website, brochures, programs and any other advertising related to the WIHS activities."  *Id.*  Mede Cahaba has been careful to separate that charitable contribution solicited by WIHS and the business agreement solicited by Mede Cahaba, noting in the affidavit of Stewart R. Dudley, Mede Cahaba's accountant, "The agreement was never meant to be a charitable donation on the part of Mede Cahaba to WIHS." (Doc. 14, Ex. 5, Aff. of Stewart R. Dudley, ¶8.)  Given these facts, it appears that the only way in which WIHS engaged in interstate activity was in soliciting a contribution which was rejected and in listening to a business offer from Tyler on behalf of Mede Cahaba.   This offer then turned to negotiations.  While the parties have argued over where the contract was executed, it is evident from the affidavits that negotiations were conducted

with Mede Cahaba remaining in Alabama and WIHS in Washington.[2]  More

importantly, the contemplated future consequences of the agreement were

entirely in Washington, D.C.   There is no evidence that WIHS had any

intention of expanding its operations beyond Washington, D.C. into Alabama.

In fact, it was Mede Cahaba who saw this transaction as an opportunity to

"provide extensive advertising and exposure" to its business.  (Doc. 14, Ex.

1, Aff. of Ahrian Davis Tyler, ¶4.)   It was Mede Cahaba, who through the

execution of the agreement, was to gain "significant input on all operational,

exhibition, policy and sponsorships decisions of WIHS," a Washington, D.C.

entity.  (Doc. 9, Ex. 1.)  And to the extent that the agreement in question

---

[2] Despite Tyler's conclusory assertions that the contract was executed "in Alabama," (Doc. 14, Ex. 1, Aff. of Ahrian Davis Tyler, ¶5), the record reflects that the negotiation and execution of the contract was centered in Washington and not Alabama. For instance, in his affidavit, Kenneth Cort ("Cort"), a board member of WIHS, states that "Ms. Smith and I negotiated the terms of the Agreement in Washington, D.C." and that Smith then "communicated the agreed-upon terms to her lawyers, who were resident in Alabama."  (Doc. 9, Ex. 2, Aff. of Kenneth J. Cort, ¶¶ 3 and 5.)  This is in keeping with Tyler's statement that the negotiations for the executed contract "were made between myself and Mr. Cort while I was in Alabama" as well as a statement by Jorge Carcinero, the former president of WIHS, that the final agreement "reflected the terms negotiated between the parties, WIHS in Maryland, and Mede Cahaba in Alabama." (Doc. 14, Ex. 1, Aff. of Ahrian Davis Tyler, ¶5; Ex. 2, Aff. of Jorge Carcinero, ¶ 8.)  Smith filed an affidavit as well.  While she could have disputed Cort's statement that he negotiated with her in Washington and that she then communicated terms to her lawyers in Alabama, she did not do so.  (Doc. 14, Ex. 3, Aff. of Mignon C. Smith.)  In any event, there is nothing that occurred during the negotiations between the parties that is sufficient to invoke specific jurisdiction.

was to be performed, the parties were to do so in Washington, D.C., with WIHS conducting its horse show with significant input and the priority listing of Mede Cahaba and Mede Cahaba providing coverage for debts incurred during the operation of that Washington, D.C. show.   The locus of the agreement in question was in Washington, D.C. and the future consequences of the agreement were to be in the same.   Thus the real object of the business transaction was to conduct business in Washington, D.C., not Alabama.

Finally, Mede Cahaba has attempted to point to the choice of law provision in the parties agreement as evidence that WIHS purposefully availed itself of the laws of Alabama and is therefore subject to specific jurisdiction.   This clause states, "This Agreement shall be subject to and interpreted in accordance with the laws of the State of Alabama without reference to its conflict of laws pronouncements."   (Doc. 9-1, ¶ 7.)

The Supreme Court has noted that "the personal jurisdiction require- ment is a waivable right" subject to "express or implied consent to the personal jurisdiction of the court." *Rudzewicz*, 471 U.S. at 472 n.14.   While a party may wave its right to personal jurisdiction through a forum selection

clause, a choice-of-law provision is not sufficient to effect such a waiver. *See id.* at 482 (noting that a choice-of-law provision "standing alone is insufficient to confer jurisdiction"); *Vista Land & Equip., L.L.C. v. Computer Programs & Sys.*, 953 So. 2d 1170, 1177-78 (Ala. 2006). The Eleventh Circuit, in examining forum selection clauses, divided them into the two classes: permissive and mandatory. *See Ocwen Orlando Holdings Corp. v. Harvard Prop. Trust, LLC*, 526 F.3d 1379, 1381 (11th Cir. 2008). A mandatory forum selection clause "dictates an exclusive forum for litigation under the contract." *Id.* (internal citations omitted). In examining this distinction, other circuits have held that a choice-of-law provision does not constitute a mandatory forum selection clause. *See King v. PA Consulting Group, Inc.*, 78 Fed. Appx. 645, 647 (10th Cir. 2003) ("To be sure, the parties agreed to submit to jurisdiction in New Jersey and to resolve their disputes by reference to New Jersey law. But a mandatory designation of venue is not effected by either of these stipulations. It confuses substance with procedure to conflate choice-of-law provisions with forum-selection clauses."); *Apex Plumbing Supply v. U.S. Supply Co.*, 142 F.3d 188, 191 (4th Cir. 1998) ("The Agreement's choice of law provision did specify that Pennsylvania law would

apply to certain arbitration matters, but it in no way designated any one court as the exclusive forum in which a party could confirm an arbitration decision.") This distinction between a choice-of-law provision and forum selection clause is obvious, as conflating the two contractual tools limits the freedom of parties to negotiate the minutia of potential litigation.

Clause 7 of the contract at bar is a choice-of-law provision and does not mandate the forum for litigation.   The clause plainly states, "This Agreement shall be subject to  and interpreted in accordance with the laws of the State of Alabama without reference to its conflict of laws pronouncements."  (Doc. 9-1, ¶ 7.)   It makes no reference to what court will be applying that law.  But while the choice-of-law provision standing alone is insufficient to confer personal jurisdiction upon this Court, it is a factor to be considered when applying the minimal contacts and purposeful availment test for personal jurisdiction.   Given the other factors discussed above, however, it is not sufficient to confer jurisdiction in this instance.

       2.    General Jurisdiction.

For a court to exercise general personal jurisdiction, so that a non-resident can be required to defend, within the forum, a cause of action

unrelated to his contacts with the forum, there must be a showing that the non-resident had "continuous and systematic general business contacts" with the forum state.   *Consol. Dev. Corp.*, 216 F.3d at 1292; *see also, Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984) (rejecting general jurisdiction despite defendant's purchase of eighty percent of its helicopter fleet and training of personnel within the forum). Even a significant amount of business, "even if occurring at regular intervals, [is] not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros*, 466 U.S. at 413.  The due process requirements for general jurisdiction are "more stringent than that for specific jurisdiction" and must be "substantial" to warrant jurisdiction. *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002) (quoting *Consol. Dev. Corp.*, 216 F.3d at 1292). Furthermore, "[a] defendant does not confer general jurisdiction on the courts of [the forum] by occasionally soliciting business there." *Fraser v. Smith*, 594 F.3d 842, 847 (11th Cir. 2010).  To the extent a party may maintain a website, "the mere existence of a website that is visible in a forum and that gives  information

about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum." *Id.* (citing *McBee v. Delica Co.*, 417 F.3d 107, 124 (1st Cir. 2005)).

Throughout its submissions to the Court, Mede Cahaba conflates general and substantial jurisdiction, attempting to use general contacts such as advertising and the promoting, marketing, selling, and distributing of "merchandise bearing the WIHS name through the United States, including the state of Alabama" as evidence of specific jurisdiction.  (Doc. 18 at 7.) Mede Cahaba argues that the WIHS advertises its website as a popular destination for "anyone passionate about horses," and that since "1 in every 20 Alabamians owns a horse, it is an understatement that many passionate horsemen reside in our state and therefore Alabamians are an anticipated target of such advertising."  (Doc. 14 at 12.)  To the extent Mede Cahaba is making a general jurisdiction argument, it is evident that WIHS does not have continuous and systematic general business contacts with the state.  No appropriate evidence has been submitted that WIHS advertises or solicits other than in an effort to attract riders and show goers to its Washington, D.C. event or that it is involved in the sale of large quantities of merchandise

to this state.  Courts from around the country have found that advertising alone is not sufficient to establish jurisdiction in such circumstances.  *See, e.g., Tillery v. Maritime Group,* 1996 U.S. Dist. LEXIS 3630 *11 (S.D. Ala. Jan. 29, 1996) (finding that "direct and indirect marketing activities in Alabama in order to solicit individuals and groups to the Palace Casino, contact by mail and telephone with various groups and social organizations, direct sales contacts with travel agencies, social and civic organizations and corporations in Alabama, direct mail contact with individuals from Alabama who have registered as members of the 'Crown Jewels' club and the operation of the 'Bus on Us' program which provides transportation for Alabama citizens to and from the Palace Casino" were insufficient contacts to establish general jurisdiction); *See also, Capizzano v. Walt Disney World Co.*, 826 F. Supp. 53, 56 (D.R.I. 1993) (stating that relying on advertising alone "to support general jurisdiction would be an affront to Due Process"); *Westphal v. Mace*, 671 F. Supp. 665, 667 (D. Ariz. 1987); *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991).  The advertising evidenced in this case simply is not the type of continuous and systematic general business contact necessary to establish

general jurisdiction, and no evidence has been provided that WIHS regularly sells a significant quantity of merchandise in  this state.

D.    Notions of Fair Play and Substantial Justice.

In addition to finding that it does not have sufficient minimum contacts to subject it to the personal jurisdiction of courts sitting in the State of Alabama, traditional notions of fair play and substantial justice would be offended by forcing WIHS to defend this action in Alabama.  The Eleventh Circuit has held that the following factors should be considered when making this determination: "(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental substantive social policies." *McGow v. McCurry*, 412 F.3d 1207, 1216 (11th Cir. 2005) (quoting *Meier*, 288 F.3d at 1276).

The burden on WIHS in this case would be great.  It does not reside in Alabama.  Furthermore, the events at the heart of this litigation occurred in Washington, D.C.  WIHS conducts its horseshow in Washington, D.C., and the

bulk of actions contemplated by the contract, including advertising and control over the show itself, were to occur in Washington, D.C.  The only factor that mitigates in favor of Mede Cahaba is that it would be most efficient for it to obtain relief in Alabama, which is the forum most convenient to its location.   Regardless, the forum most interested in obtaining a resolution of this controversy is Washington, D.C.  The interests of the jurisdictions involved in this case tips in favor of resolving it in Washington, D.C. rather than Alabama.

IV.    Conclusion.

For the reasons stated above, the Court declines to exercise personal jurisdiction over WIHS in this case.  The Court therefore rejects the Report and Recommendation of the Magistrate Judge.  The motion by WIHS to dismiss this action is due to be GRANTED.  A separate order will be entered.

Done this 21st day of April 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671